UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AUREL SMITH, #02-A-6279,   **REPORT AND**
                            **RECOMMENDATION**
                    Plaintiff,

v.                          13-CV-00447-RJA-JJM

MARK BRADT, et al.,
                    Defendants.
_____

       This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [32, 37].[1]  Before me is defendants' motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and 12(c) [51].  Oral argument was held on July 22, 2015 [55].  For the following reasons, I recommend that defendants' motion be granted in part and denied in part.

### BACKGROUND

       Plaintiff, a *pro se* inmate, commenced this action on May 1, 2013 pursuant to 42 U.S.C. §1983, seeking redress for conduct arising while he was incarcerated at the Attica Correctional Facility ("Attica").  After the Case Management Order [17] was entered, plaintiff moved for leave to file an Amended Complaint [19].  That motion was denied to the extent it sought to assert proposed Counts Four and Five, but was otherwise granted.  *See* December 8, 2014 Report, Recommendation, and Order [33]; January 12, 2015 Order [34].

       Count One of the Amended Complaint [19-1] alleges that Mark Bradt, the Superintendent of Attica, and William Hughes, the Deputy Superintendent for Security at Attica,

---

[1]  Bracketed references are to the CM/ECF docket entries.

placed him in a double bunk cell with a chronic smoker, exposing him to environmental tobacco smoke ("ETS") notwithstanding the fact that he suffers from asthma, and ignored his requests to be moved to another cell, in violation of his Eighth Amendment rights. Count Six of the Amended Complaint seeks injunctive and declaratory relief for pervasive guard brutality (id., Count Six).

Defendants Bradt and Hughes, who were also named in the Complaint, initially filed an Answer [36] in response to the Amended Complaint.[2] Upon service of the Amended Complaint on the newly added defendants, they joined with defendants Bradt and Hughes in moving for dismissal of the Amended Complaint.

## ANALYSIS

"When, as here, the complaint is filed by a *pro se* plaintiff, we construe the complaint liberally, interpreting it to raise the strongest arguments that it suggests." Caro v. Weintraub, 618 F.3d 94, 97 (2d Cir. 2010). Moreover, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated". Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). However, leave to amend is "taken very seriously and with consideration that the Court need not allow unlimited efforts to state a claim". Henry v. Cuomo, 2008 WL 489258, *3 (W.D.N.Y. 2008) (Telesca, J.).

---

[2] Although they purported to answer plaintiff's Second Amended Complaint, there is no such pleading.

A.      **Dismissal of All Claims for Failure to Exhaust Administrative Remedies**

Plaintiff's Amended Complaint alleges that on December 10 and 17, 2013 he filed grievances with the Inmate Grievance Resolution Committee ("IGRC") concerning being double bunked with a smoker, and received no response to either grievance. [19-1], ¶¶27-30. He alleges that on January 5, 2013, he was "physically battered" by a "correctional sergeant and two correctional officers" and "told to stop complaining and filing grievances; told to 'shut up' . . . and threatened . . . that if he kept up his 'letter campaign' there would be severe injuries to him and he would be set up and sent to [the Special Housing Unit] with a new weapons charge" (id., ¶38). He alleges that this "experience was sufficient to intimidate him from [further inquiring into his grievances]" (id., ¶39). Apart from the alleged threats, plaintiff also alleges that he "has learned from . . . his direct experience that the inmate grievance program supervisor at Attica does not properly file certain damaging prisoner grievances" (id., ¶41).

The Second Circuit had previously recognized that a failure to exhaust administrative remedies could be excused when: 1) administrative remedies are not available to the prisoner; 2) defendants acted in such a manner that they are estopped from relying on the defense; or 3) special circumstances justify the prisoner's failure to comply with the exhaustion requirement. See Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004); Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004). However, the Supreme Court recently rejected the "'special circumstances' exception", concluding that "[t]he only limit to §1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, __ U.S.__, 136 S.Ct. 1850, 1862 (2016). See Williams v. Priatno, 2016 WL 3729383, *4 (2d Cir. 2016) ("to the extent that our special circumstances exception established in [Giano and Hemphill], permits plaintiffs to file a lawsuit in federal court without

first exhausting administrative remedies that were, in fact, available to them, those aspects of Giano and Hemphill are abrogated by Ross. Indeed, Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate"). An administrative remedy may be considered unavailable when "it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates", or the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use", or "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation". Ross, 136 S.Ct. at 1859-60.

    Defendants argue that plaintiff does not provide sufficient factual support for the assault or threat sufficient to excuse his failure to exhaust. Defendants' Memorandum of Law [51-1], pp. 20-21. "A failure to exhaust argument is an affirmative defense, such that a plaintiff is not required to plead that they have exhausted administrative remedies in their complaint, and a court can only grant a Rule 12(b)(6) dismissal on this ground if a failure to exhaust is clear from the face of the complaint." Mitchell v. Sepowski, 2014 WL 4792101, *2 (S.D.N.Y. 2014).

    Liberally construing plaintiff's *pro se* Amended Complaint, as I must, I conclude that plaintiff has sufficiently pled a possible excuse for his failure to exhaust. See Simmons v. Cripps, 2013 WL 1285417, *3 (S.D.N.Y. 2013) ("Where, as here, there is ambiguity in the record as to the circumstances surrounding failure to exhaust, the Court agrees that it would be more prudent to rule on the exhaustion issue on a more fully-developed record"). Therefore, this portion of defendants' motion is denied, without prejudice to raising the exhaustion issue in the future.

**B.     Count One - Claim against Defendants Bradt and Hughes for Plaintiff's Exposure to ETS**

Defendants Bradt and Hughes argue that the Amended Complaint does not sufficiently plead their personal involvement in his exposure to second-hand smoke. Defendants' Memorandum of Law [51-1], p.p. 4-13. The Amended Complaint alleges that "[i]n early to mid-November 2012, plaintiff wrote directly to defs. Bradt and Hughes" concerning the conditions of his confinement, but received no response. Amended Complaint [19], ¶¶19-20. It alleges that plaintiff "submitted a second complaint directly to Defs. Bradt and Hughes on December 3, 2012, that was virtually identical to the [earlier] complaint" (id., ¶21). In response, plaintiff "received a written reply from Def. Bradt stating that he referred plaintiff's letter to Def. Hughes", but no response was ever received from Deputy Superintendent Hughes (id., ¶¶22-23). Although not attached to the Amended Complaint, the Complaint attached his December 3, 2012 written complaints to defendants Bradt and Hughes, as well as defendant Bradt's December 5, 2012 response stating that the matter was being referred to defendant Hughes. Complaint [1], pp. 23-25 of 33.[3]

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under §1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). "A plaintiff can survive a motion to dismiss by alleging facts showing that a defendant was personally involved in the violation in at least one of five ways", Rodriguez v. Warden, Metropolitan Correctional Facility, 2015 WL 857817, *14 (S.D.N.Y. 2015), namely: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3)

---

[3]     Defendants acknowledge that I "may consider these exhibits to the Complaint in ruling on this Motion". Defendants' Memorandum of Law [51-1], p. 13.

the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

"Until recently, a plaintiff's claim that he or she sent a letter or grievance to a defendant, where the defendant did not take action on the letter or respond, was generally insufficient at the pleading stage to establish notice and personal involvement." Barrow v. Buren, 2015 WL 417084, *9 (N.D.N.Y. 2015). However, "the Second Circuit has recently cautioned courts against dismissing claims at the 12(b)(6) stage for failure to allege personal involvement where the plaintiff alleges that an official failed to respond to a letter of complaint". Smith v. Wildermuth, 2015 WL 403108, *9 (N.D.N.Y. 2015). In Grullon, the Second Circuit held that "[a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference . . . that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained". 720 F.3d at 141. *See* Toliver v. City of New York, 530 Fed. App'x 90, 93 (2d Cir. 2013) (Summary Order) (describing Grullon as follows: "pro se allegations that a prisoner sent a letter to a warden complaining of unconstitutional conditions that were not remedied are sufficient to state a claim for deliberate indifference against the warden").

Grullon "turned on the fact that the issue arose in the context of [Rule] 12(b)(6), rather than [Rule] 56". Samms v. Fischer, 2013 WL 5310215, *5 (N.D.N.Y. 2013).[4] The Second Circuit explained that "[i]t is of course possible that the Warden read the Letter and took appropriate action or that an administrative procedure was in place by which the Warden himself would not have received the Letter addressed to him; but those are potential factual issues as to personal involvement that likely cannot be resolved without development of a factual record". Grullon, 720 F.3d at 141.

Notwithstanding Grullon, defendants note that many courts (including courts in this district) continue to hold that allegations of receipt of letters are insufficient to establish personal involvement. *See* Defendants' Memorandum of Law [51-1], p. 11 (citing cases). However, I agree with those courts that have concluded that "at the pleading stage, a prison supervisory official who actually receives a letter or appeal referencing an ongoing constitutional violation will be deemed to be personally involved in the underlying violation, unless it is clear that he took 'appropriate action' to address the violation." Elder v. McCarthy, 2015 WL 5254290, *6 (W.D.N.Y 2015) (Siragusa, J.). *See also* Johnson v. McKay, 2015 WL 1735102, *9-10  (N.D.N.Y. 2015) ("[U]nder Grullon, Plaintiff is entitled to the inference that Defendant Fischer received his notifications, read them, and became aware of the alleged conditions of

---

[4]   *Compare with* Ciaprazi v. Fischer,  2015 WL 1315466, *8, report and recommendation adopted in part, rejected in part,  2015 WL 1315676 (S.D.N.Y  2015) ("In Grullon, the court was concerned that the district judge had violated the principle that leave to amend should be granted freely unless any amendment would be futile . . .  Viewed in that light, Grullon's holding that the plaintiff's letter to the warden was "sufficient to give an indication that a valid claim might be stated" does not represent a sea change in the law, but, rather, merely a reminder that, particularly in pro se cases, judges must afford plaintiffs a sufficient opportunity to plead facts that could establish a defendant's personal involvement before dismissing civil rights complaints").

which Plaintiff complained. Therefore, the complaint plausibly suggests Defendant Fischer's personal involvement"); Ferrer v. Fischer, 2014 WL 1763383, *3 (N.D.N.Y. 2014) ("Plaintiff's allegations regarding Commissioner Fischer are limited, but he does allege that he sent multiple letters to defendant Fischer, that defendant Fischer was fully aware of his situation, and that defendant Fischer failed to respond to the letters or otherwise take appropriate action. Defendant Fischer may be able to adduce sufficient evidence through discovery to demonstrate that he was not personally involved in the violations at issue. However, in light of the Second Circuit's recent decision in Grullon, I find that at this stage, plaintiff's allegations are sufficient to support defendant Fischer's personal involvement"); Selah v. Fischer, 2013 WL 5603866, *3 (N.D.N.Y. 2013) ("In light of the Second Circuit's recent decision in Grullon . . . Selah's allegation that Taylor did not respond to the grievances and complaints that Selah sent to him was sufficient to satisfy the personal involvement pleading requirement").[5]

        Here, the allegations of the Amended Complaint and attachments to plaintiff's Complaint ([1], p. 25 of 33) demonstrate that defendant Bradt did not merely receive, read and ignore plaintiff's December 3, 2013 letter, which was "virtually identical" to his earlier letter (Amended Complaint [19-1], ¶21), but took appropriate action by referring plaintiff's complaints to defendant Hughes. "The general rule is that if a supervisory official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter." Collins v. Ferguson, 2015 WL 1044359 (W.D.N.Y. 2015) (Geraci, J.). See Rivera v. Fischer, 655 F. Supp. 2d 235, 238-39 (W.D.N.Y. 2009) (Larimer, J.) (concluding that allegations against certain supervisory

---

[5]     Relying on Grullon, I reached a similar conclusion in Warren v. Fischer, et al. (13-cv-00120 (S)(M)) (August 18, 2014 Report and Recommendation [19], adopted September 10, 2014 Text Order [20]) and Johnson v. Fischer, et al. (12-cv-00343(S)(M)) (February 13, 2015 Report, Recommendation and Order [42], adopted March 9, 2015 Text Order [43]).

officials that they received letters and referred them to subordinates were insufficient to establish the personal involvement ); Vega v. Artus, 610 F.Supp.2d 185, 199 n. 13 (N.D.N.Y. 2009) ("Prison supervisors are entitled to refer letters of complaint to subordinates, and rely on those subordinates to conduct an appropriate investigation and response, without rendering the supervisors personally involved in the constitutional violations alleged in the letters of complaint"); Samms, 2013 WL 5310215 at *5 ("Defendant Fischer did take appropriate action, *i.e.*, by referring the matter to a subordinate, on whom he was entitled to rely to conduct an appropriate investigation and response"). Therefore, I recommend that defendant Bradt be dismissed.

However, at this stage, the allegations of the Amended Complaint and the attachments to the Complaint, which demonstrate that a letter of complaint was sent directly to defendant Hughes on December 3, 2012, and that defendant Bradt referred a similar letter to defendant Hughes on December 5, 2012, are sufficient to establish defendant Hughes' personal involvement.

Alternatively, defendants argue that even if personal involvement is sufficiently pled, defendant Hughes is entitled to qualified immunity, since the law at the time of the alleged violation clearly stated that receipt of correspondence was not sufficient to establish personal involvement. Defendants' Memorandum of Law [51-1], pp. 13-15. However, Grullon addresses only the pleading standard for establishing personal involvement, rather than the substantive law for establishing personal involvement. *See* Jean-Laurent v. Lawrence, 2014 WL 1282309, *3 (S.D.N.Y. 2014).[6] Therefore, I recommend that defendant Hughes not be dismissed at this time.

---

6   *Compare with* Samms, 2013 WL 5310215 at *5 ("Grullon (which appears to constitute a departure from a settled legal standard) arose after the spring of 2008, rendering Defendant Fischer protected by qualified immunity").

## C. Count Six - Claim for Injunctive and Declaratory Relief Based upon Guard Brutality

Plaintiff concedes that this claim can be dismissed as moot insofar as it seeks injunctive relief based upon his transfer out of Attica. See Plaintiff's Affirmation [53], ¶ 4. Although plaintiff does not address his request for declaratory relief, that is also mooted by his transfer. See Young v. Coughlin, 866 F.2d 567, 568 n. 1 (2d Cir.), cert. denied, 492 U.S. 909 (1989) ("Since Young is no longer incarcerated at Auburn, but was transferred to Attica Correctional Facility, his claim for declaratory and injunctive relief is moot"). Therefore, I recommend that this portion of defendants' motion be granted.

## D. Should the Dismissal be With Prejudice?

Defendants request that the dismissal be with prejudice. Defendants' Memorandum of Law [51-1], pp. 24-25. I agree with defendants that Count Six, which plaintiff concedes is moot, should be dismissed with prejudice. However, since it is possible that there may be other communications or conduct that could be pled to support defendant Bradt's personal involvement in Count One, I recommend that the dismissal of that that claim be without prejudice. However, I remind plaintiff that he will not be given unlimited opportunities to attempt to re-plead his claim against defendant Bradt. See Henry, 2008 WL 489258 at *3.

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss [51] the Amended Complaint be granted to the extent it seeks dismissal of Count One as against defendant Bradt, without prejudice, and Count Six, with prejudice, but otherwise be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by October 3, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections

Dated: September 14, 2016

                    /s/ Jeremiah J. McCarthy
                    JEREMIAH J. MCCARTHY
                    United States Magistrate Judge